**Betty Mae TAYLOR, Plaintiff,**

v.

**MAYOR AND CITY COUNCIL OF BERLIN, MARYLAND, et al., Defendants.**

**No. CIV. WMN–99–1874.**

United States District Court, D. Maryland.

May 4, 2000.

Thomas J. Spain, Vinyard & Spain, Salisbury, MD, J. Edward Martin, Law Office of J. Edward Martin, Towson, MD, for plaintiff.

John S. Vander Woude, Eccleston and Wolf, Baltimore, MD, Cynthia L. Maskil, Semmes, Bowen & Semmes, Baltimore, MD, for defendants.

### *MEMORANDUM AND ORDER*

GESNER, United States Magistrate Judge.

This case has been referred to the undersigned for the resolution of discovery disputes pursuant to 28 U.S.C. § 636(b) and Local Rule 301. Plaintiff Betty Mae Taylor has sued defendants, Deputy Sheriff Brian Heller and the Mayor and City Council of Berlin, Maryland, for the alleged use of excessive force during her arrest on July 19, 1996 which allegedly resulted in injuries to her left shoulder. Currently pending are Defendants' Motion to Strike Expert Designations and for Sanctions and Plaintiff's Opposition thereto. (Paper Nos. 20 and 24). No hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, defendants' motion will be denied.

### I. *Background*

Plaintiff alleges that her left shoulder was injured during the arrest which gave rise to this lawsuit. (Paper No. 18 at 4). The parties now dispute whether plaintiff falsely and misleadingly identified three of her treating physicians as experts with respect to her shoulder injuries.

Two of the physicians at issue, Drs. Bruce and Bontempo, were first identified in plaintiff's answers to interrogatories which were served on defendants on September 27, 1999. (Paper No. 20, Ex. A). These answers were signed by plaintiff and stated, in pertinent part, that "Dr. Bruce treated [her] immediately after the injury and did so continuously until April 1999"; that "Dr. Bontempo performed surgery on [her] right hand for carpal tunnel syndrome in 1999"; and that she intended to call as expert witnesses all health care providers identified in her answers. (*Id.*).

Drs. Bruce and Bontempo were subsequently identified as potential expert witnesses regarding plaintiff's shoulder in plaintiff's expert disclosure statement. (Paper No. 20, Ex. B). This statement was timely served on defendants on October 11, 1999 and was signed by plaintiff's counsel. (*Id.*). With respect to Dr. Bruce, the statement said:

> Dr. Bruce ... will testify as an expert for the Plaintiff. He will describe his continuing course of treatment for the Plaintiff's injuries to her left arm, as well as other treatment, given by him, for non-related conditions subsequent to the incident out of which this cause of action arises. Plaintiff's counsel has previously furnished to Defense counsel copies of medical evaluation forms, signed by Dr. Bruce, with respect to his examinations on January 14, 1998 and April 2, 1997. Plaintiff is seeking, from Dr. Bruce, a complete statement of all opinions to be expressed by him and information about whether he has testified as an expert at trial or by deposition within the preceding four years.

(Paper No. 20, Ex. B). With respect to Dr. Bontempo, the statement said:

> Eric Bontempo ... is scheduled to see the Plaintiff on October 22, 1999 in conjunction with her continuing problems with her shoulder. Plaintiff's counsel have requested a report from Dr. Bontempo and he has promised to furnish counsel with a report following his visit with the Plaintiff on October 22. At that time, the Plaintiff's attorneys will request details of his opinions with respect to the Plaintiff and a listing of all other cases in which he has testified within the preceding four years.

(Paper No. 20, Ex. B).

At their respective depositions, Drs. Bruce and Bontempo made clear that while they

had treated plaintiff for various ailments on dates subsequent to the injury allegedly caused by defendant Heller, their knowledge of her alleged shoulder injury was very minimal. (Paper No. 20, Exs. E and H).

The third disputed physician in question, Dr. Hedger, was first identified during plaintiff's deposition on November 2, 1999. (Paper No. 20, Ex. C at 29–31). At her deposition, plaintiff testified that she was scheduled to see Dr. Hedger two days later regarding her ankle and left shoulder and that any recommendation for shoulder surgery would be up to him. (*Id.*) Defendants mailed a notice of deposition to Dr. Hedger six days later and deposed him on December 15, 1999, the same day that they deposed Drs. Bruce and Bontempo. (Paper No. 24 at 3; Paper No. 20 at 12).

At his deposition, Dr. Hedger testified that he only treated plaintiff on one occasion after the date plaintiff allegedly suffered the injury at issue in this case but that he did not treat her for that injury. (Paper No. 20, Ex. I at 6). According to Dr. Hedger, during his appointment with the plaintiff on November 4, 1999, plaintiff "complained of pain in the neck with radiation down the left arm." (Paper No. 20, Ex. I at 7). Dr. Hedger also testified that he did not hold an opinion with respect to plaintiff's left arm and shoulder. (Paper No. 20, Ex. I at 8).

## II. *Discussion*

In their pending motion, defendants seek to strike plaintiff's designation of Drs. Bontempo and Hedger (though not Dr. Bruce) as experts and exclude their testimony at trial. (Paper No. 20 at 13). In response, plaintiff states that she does not intend to call Drs. Bontempo and Hedger as expert witnesses. (Paper No. 24 at 1). Therefore, defendants' motion is moot and will be denied insofar as it seeks to strike the expert designations and preclude the trial testimony of Drs. Bontempo and Hedger. The court now turns to defendants' request for the imposition of monetary sanctions against plaintiff.

Defendants, relying on both Fed. R. Civ. Pro. 11 and 37(c)(1), argue that they are entitled to an award of the costs and attorneys fees incurred to depose Drs. Bruce, Bontempo, and Hedger. (Paper No. 20 at 14). According to defendants, plaintiff's expert disclosure statement "falsely and misleadingly" designated Drs. Bruce and Bontempo as experts, and plaintiff "falsely and misleadingly" testified during her deposition that Dr. Hedger had information relevant to her alleged shoulder injury. (*Id.* at 9, 12). Defendants argue that, in reliance on plaintiff's expert disclosure statement and deposition testimony, they deposed Drs. Bruce, Bontempo and Hedger only to discover that the doctors "hold no expert opinions relevant to this case." (*Id.* at 3).

Plaintiff responds that sanctions are not warranted because neither her expert disclosure statement designating Drs. Bontempo and Bruce nor her deposition testimony regarding Dr. Hedger were false and misleading. (Paper No. 24 at 4–5). According to plaintiff, "[t]he deficiency here, if any, is that the testimony of the doctors was not as strong as the Plaintiff's recollection of her treatment." (*Id.* at 5).

The court recognizes that it has broad discretion to order the imposition of reasonable expenses, including attorney's fees, as a sanction for the violation of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. Pro. 37(c)(1). The trial court's decision regarding the fashioning of appropriate sanctions is reviewed under an abuse of discretion standard. *Basch v. Westinghouse Elec. Corp.*, 777 F.2d 165, 174 (4th Cir.1985). For the reasons set forth below, the Court concludes that plaintiff did not intentionally mislead defendants with respect to her experts and, therefore, the imposition of monetary sanctions is not appropriate. Because plaintiff's approach to the designation of experts was less than diligent in this case, however, the court concludes that non-monetary sanctions are appropriate under the circumstances.

With respect to Dr. Bruce, plaintiff's expert disclosure statement provides that he would "describe his continuing course of treatment for the ... injuries to her left arm." (Paper No. 20, Ex. B). Dr. Bruce's deposition testimony later revealed that plaintiff only twice complained to him of

problems with her left arm and that he had no expert opinion regarding her injury. (Paper No. 20, Ex. E at 14, 21–22, 39).

As to Dr. Bontempo, plaintiff's expert disclosure statement provided that Dr. Bontempo was "scheduled to see the Plaintiff on October 22, 1999 in conjunction with her continuing problems with her shoulder" and that plaintiff's counsel was awaiting the results of that upcoming examination of plaintiff's shoulder.[1] (Paper No. 20, Ex. B). At his deposition, Dr. Bontempo testified that he began treating plaintiff in January 1998 and that she complained of numbness in her left hand in October 1998 and pain in her left shoulder during the October 22, 1999 examination mentioned in plaintiff's expert disclosure statement. (Paper No. 20, Ex. H at 10–11). On the basis of the October 22nd examination of plaintiff, Dr. Bontempo concluded that plaintiff had tendinitis in her left shoulder, but did not offer any expert opinion. (Paper No. 20, Ex. H at 23–24).

Now that Drs. Bruce and Bontempo have been deposed, it is clear that plaintiff's expert disclosure statement was inaccurate regarding their potential expert testimony. In defense of the expert designation, plaintiff's counsel asserts that he consulted with plaintiff about her medical treatment history and forwarded some medical records to defense counsel prior to serving the expert disclosure statement. (Paper No. 24 at 5). Defense counsel points out, however, that these records were not relevant to plaintiff's shoulder. (Paper No. 20 at 9).

Contrary to what plaintiff's counsel appears to suggest, the Federal Rules of Civil Procedure require plaintiff's counsel to do more than merely recite what the plaintiff has told counsel and pass along medical records to opposing counsel. In the context of discovery, counsel is required to undertake a "reasonable inquiry" before signing certain pleadings and to certify that the disclosure is "complete and correct as of the time it is made." *See* Fed. R. Civ. Pro. 26(g); *see also* Fed. R. Civ. Pro. 11(b)(attorney certifies to court by signing pleading that information contained therein, "after an inquiry reasonable, under the circumstances, is not being presented for any improper purpose ...", etc.). Similarly, a party has a duty to supplement or amend certain discovery responses if the party learns that the response is in some material respect incomplete or incorrect. Fed. R. Civ. Pro. 26(e)(1).

In this case, more diligence by plaintiff's counsel would have likely revealed specific information regarding the scope, or lack thereof, of expert opinion to be offered by Drs. Bruce and Bontempo. Plaintiff's counsel's mere reliance on plaintiff's recollections regarding her medical treatment was not a reasonable inquiry in this case. On the other hand, there is no indication that Dr. Bruce or Dr. Bontempo were designated for an improper purpose such as inducing defendants to incur needless deposition expenses. *See Macmillan, Inc. v. American Express Company*, 125 F.R.D. 71, 74 (S.D.N.Y. 1989)("Courts should resolve all doubts and draw all inferences in favor of the signer" for Rule 11 analysis). In addition, both Dr. Bruce and Dr. Bontempo are treating physicians and would have possibly been deposed even if they had been designated exclusively as fact witnesses.

As to Dr. Hedger, however, the situation is a bit different in that plaintiff's counsel did not identify Dr. Hedger as an expert. Defendants maintain that they deposed Dr. Hedger for two reasons: 1) the plaintiff identified him in her deposition as a surgeon who would decide whether she should have surgery for her shoulder; and 2) plaintiff's expert disclosure statement provided that she anticipated "the possibility of additional experts if Dr. Bontempo or Dr. Bruce recommend additional treatment." (Paper No.20 at 12). It was only after the deposition of Dr. Hedger, according to defendants, that they realized he held no expert opinion in this case. Accordingly, defendants claim that plaintiff's deposition testimony regarding Dr. Hedger was misleading.

The court has reviewed plaintiff's deposition testimony regarding Dr. Hedger and

---

1. The court notes that the disclosure statement clearly conveyed that Dr. Bontempo's importance as an expert witness was as yet unknown at the time of signing of the expert disclosure statement and could only be determined pending the outcome of his upcoming examination.

does not find it to be misleading. Plaintiff's testimony concerning Dr. Hedger was very brief, and plaintiff indicated that her appointment was not exclusively for her shoulder. (Paper No. 20, Ex. C at 29–30). Neither plaintiff nor her counsel can be faulted because defendants chose to depose Dr. Hedger at the same time as the other doctors and before they obtained the results of Dr. Hedger's exam of plaintiff. Accordingly, the court does not believe that sanctions are appropriate as they pertain to Dr. Hedger's deposition.

With respect to disclosures regarding Dr. Bruce and Dr. Bontempo, however, the court finds that the conduct of plaintiff's counsel reflects a lack of appreciation of an attorney's disclosure obligations under the Federal Rules of Civil Procedure as well as the Local Rules and Discovery Guidelines of this Court. Given the lack of intentional misconduct by plaintiff's counsel, the court does not believe that the imposition of monetary sanctions is appropriate but does conclude that a non-monetary sanction is appropriate. Accordingly, as a sanction, plaintiff's counsel[2] are admonished against failing to exercise the requisite due diligence in responding to their discovery obligations in the future. Further, plaintiff's counsel are each hereby directed to read the Federal Rules of Civil Procedure and accompanying commentary, and the Local Rules and the Discovery Guidelines of the United States District Court for the District of Maryland and, within thirty (30) days of this Order, are each to file an affidavit with the court affirming that they have done so.

### III. *Conclusion*

For the foregoing reasons, IT IS this _____ day of May, 2000 ORDERED that:

1. Defendant's Motion to Strike Expert Designations, and for Sanctions (Paper No. 20) is hereby DENIED;

2. Within thirty (30) days of this Order, no later than June 5, 2000, plaintiff's counsel shall each file an affidavit with the court

affirming that they have read the Federal Rules of Civil Procedure and accompanying commentary, the Local Rules and the Discovery Guidelines of the United States District Court for the District of Maryland;

3. The Clerk of the Court shall mail copies of this Order to counsel of record.

---

2. Based on the court's review of the file in this case, it appears that both counsel of record actively participated in the discovery phase of this case and, therefore, the sanctions imposed by the court are to apply to both counsel of record for the plaintiff.